IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ZYRA I. YOUNGBLOOD, | : | |
| Plaintiff, | : | |
| v. | : | No. 5:13-cv-258 (MTT) (CHW) |
| CAROLYN W. COLVIN, | : | Social Security Appeal |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Zyra I. Youngblood's application for benefits. In accordance with the analysis below, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

Plaintiff, who was born in September 1956, applied for Title II and Title XVI benefits in November 2009. (R. 37; Pl.'s Br., Doc. 13, p. 3). At her administrative hearing in December 2011, Plaintiff claimed to suffer from "longstanding back pain which radiates into her leg[s]," "bilateral wrist pain which had been diagnosed as carpal tunnel syndrome," "bilateral hip pain," "breathing problems," and "gastrointestinal issues." (R. 36). Plaintiff claims that she quit her last job working as a cook or dishwasher in July 2006 because of her back and ankle pain. (R. 40, 47). Regarding Plaintiff's back pain, in particular, Plaintiff claims that it started when she was 16, and that it grew worse when Plaintiff had her first child. (R. 47-48). Plaintiff also claims that she broke her ankle getting out of the tub, (R. 53), and that her wrist pain is the result of "roll[ing] tubs . . .all day long" at a fiberglass tub manufacturer, where Plaintiff worked from

1

May 1998 to July 2000. (R. 49-50, 181, 186). While Plaintiff acknowledged that she had never been hospitalized for her breathing problems, she indicated that she regularly uses an albuterol pump. (R. 52).

Plaintiff's applications were denied initially and on reconsideration, (R. 63-66), and the reviewing administrative law judge ("ALJ") found Plaintiff "not disabled" in an opinion dated January 23, 2012. (R. 21-28). The Appeals Council denied review in Plaintiff's case on May 24, 2013, and Plaintiff now seeks review before this Court under "sentence four" of 42 U.S.C. § 405(g). *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007).

## STANDARD OF REVIEW

District courts have a limited role in reviewing claims brought under the Social Security Act. Review of the Commissioner's decision is restricted to a determination of whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Consequently, a court's role in reviewing claims brought under the Social Security Act is quite narrow.

District courts must defer to the Commissioner's factual findings. Courts may not decide facts, re-weigh evidence, nor substitute their judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). *See also Graham v. Bowen*,

790 F.2d 1572, 1575 (11th Cir. 1986). Courts must scrutinize the entire administrative record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if it is supported by substantial evidence. *Id.*

The Commissioner's findings of law are given less deference. Courts must determine if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). Courts must therefore consider any questions of law *de novo*, and "no . . . presumption of validity attaches to the [Commissioner's] conclusions of law, including determinations of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). The Commissioner's failure to apply the correct legal standards or to provide a sufficient factual basis for the court to determine that the correct legal standards have been followed is grounds for reversal. *Id.*

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity due to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of a least twelve months. 42 U.S.C. § 423(d)(1)(A).

When analyzing the issue of disability, the Commissioner must follow a five-step sequential evaluation procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether or not the claimant is currently engaged in substantial gainful activity. Second, upon a finding that the claimant is not working, the Commissioner determines whether the claimant has any impairment that prevents the performance of basic work activities. Next, if the existence of such impairments has been found, the Commissioner determines

whether the impairment(s) meets or medically equals the severity of one or more of the specified impairments listed in Appendix 1 of Part 404 of the regulations. If the claimant's impairments do not meet or medically equal a listed impairment, the Commissioner must evaluate the claimant's residual functional capacity (RFC) for work. Fourth, using the claimant's RFC, the Commissioner determines whether the claimant is able to perform the physical and mental demands of his past work despite the impairments. Finally, and only when it has been determined that the claimant is unable to perform his or her past work, the Commissioner must determine whether there are sufficient numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and past work experience.

## ANALYSIS

Plaintiff raises three grounds for relief. First, Plaintiff argues that the ALJ improperly discounted the opinion of Dr. James Southerland, a treating physician. As discussed below, however, the ALJ sufficiently articulated "good cause" for discounting Dr. Southerland's opinion, and therefore did not err. Second, Plaintiff argues that the ALJ failed to acknowledge the objective findings of Dr. Edith Woody, a consultative examiner. Contrary to Plaintiff's arguments, the ALJ properly acknowledged and discounted Dr. Woody's findings, some of which were not, in fact, objective. Finally, Plaintiff argues that the ALJ erred in discounting complaints of medication side effects in the form of drowsiness. As discussed below, though, neither the record nor the cases cited by Plaintiff support Plaintiff's position. Rather, because none of Plaintiff's arguments are persuasive, and because the Commissioner's decision as a whole appears to be based on proper legal standards and supported by substantial evidence, it is recommended that the decision below be affirmed.

## THE ALJ'S FINDINGS

Following the five-step sequential evaluation procedure, the reviewing ALJ made the following determinations in Plaintiff's case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, July 10, 2006. (R. 23). At step two, the ALJ found that Plaintiff had the following severe impairments: "asthma." (*Id.*). The ALJ noted that Plaintiff claimed to suffer from other impairments, including "right shoulder pain; lumbago/"mild" degenerative spurring at L3-5; high cholesterol; hypertension; focal cecal diverticulitis; right trigger finger; hip enthesopathy; and right ankle pain." (*Id.*). However, the ALJ concluded that these other alleged impairments "(1) [did] not meet the durational requirement or [were] episodic in nature; (2) [were not] substantiated by any objective medical evidence and/or diagnostic laboratory techniques; or (3) [were] corrected or controlled by medication, treatment, surgery, or diet." (R. 23-24).

At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24). Therefore, the ALJ assessed Plaintiff's RFC and found that Plaintiff could perform:

> medium work . . . except she can occasionally climb ladders, ropes, and scaffolds. She can frequently climb ramps/stairs, balance, stoop, crouch, kneel, and crawl. The claimant should avoid even moderate exposure to pulmonary irritants such as dust, odors, gases, and poorly ventilated areas as asthma precautions.

(*Id.*)

Based on this RFC finding, the ALJ found, at step four, that Plaintiff could perform her past relevant work as a "cashier/checker." (R. 26). The ALJ also made alternative step-five findings, though, and determined that Plaintiff could work as a "shipping/receiving clerk," a

5

"vending route driver," and a "driver." (R. 27-28). Therefore, the ALJ found Plaintiff "not disabled" within the meaning of the Social Security Act.

## DR. SOUTHERLAND'S OPINION

Plaintiff first argues that the ALJ erred in discounting the opinion of Dr. James Southerland, a treating physician who indicated, in December 2011, that Plaintiff could not work, that she could continuously sit for only one hour, that she could continuously stand for only 30 minutes, and that during an eight-hour workday, Plaintiff could sit for only four hours and could stand or walk for only two hours in total. (R. 361-362). Dr. Southerland also indicated that Plaintiff needed to shift positions at will, that she could never lift weights of twenty pounds or more, that she could grasp, manipulate, and reach—with her right arm—only 10% of the workday, and that her impairments would cause about three absences each month. (R. 362-363).

Although Plaintiff correctly notes that ALJs must ordinarily give substantial or considerable weight to the medical opinions of treating physicians like Dr. Southerland, ALJs may discount treating physicians' opinions for "good cause." *See, e.g., Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "Good cause" exists when (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with his or her own records. *Id.*

In this case, the ALJ assigned Dr. Southerland's December 2011 opinion "less weight," because Dr. Southerland's findings were "grossly inconsistent with his own treating notes and [with] the evidence as a whole." (R. 26). Substantial evidence supports the ALJ's decision. As the Commissioner notes, the records from Dr. Southerland on file date only from October 2009. (Resp., Doc. 14, p. 13). These records contain remarkably few objective medical findings, but the findings that are present do not support the drastic limitations set-forth in Dr. Southerland's

6

December 2011 opinion. In both October 2009 and January 2010, Dr. Southerland indicated that Plaintiff had full range of motion in her head and neck, that her respiration was "even and unlabored," and that Plaintiff was "Well developed, well nourished, [and in] no acute distress." (R. 282-283). In October 2011, Dr. Southerland noted that Plaintiff claimed to suffer from "bad pains in [her] right leg." (R. 352). Dr. Southerland diagnosed Plaintiff with enthesopathy of the hip region, but he only ordered refills of medications Plaintiff was already taking. (R. 352-353).

Other evidence from the TenderCare Community Health Center ("TenderCare"), where Plaintiff saw Dr. Southerland, similarly fails to support the drastic limitations set forth in Dr. Southerland's December 2011 opinion. In September and November 2007, for example, it was noted that Plaintiff's biggest complaint was lower back pain. (R. 355, 359). Despite this complaint, Plaintiff was found to have a full range of motion in her back muscles, and her T-Spine was listed as "w/pain," but otherwise "Normal." (R. 360). Notes from March 2008, October 2008, October 2009, and January 2010 all show that Plaintiff's respiration was "even and unlabored." (R. 282-84, 287). The January 2010 report notes complaints of back and wrist pain, but again, the treating physician only ordered refills of a medication Plaintiff was already taking—Ultram. (R. 309-10).

Finally, the findings of Dr. Edith Woody, a consultative examiner, do not support Dr. Southerland's December 2011 opinion, as Plaintiff contends. (Reply, Doc. 16, p. 4). Dr. Woody indicated that Plaintiff was "[p]ositive for back pain and bilateral knee pain," (R. 299), but she also found that Plaintiff's "gait appears to be normal" and that Plaintiff's "[g]rip strength [was] 5/5." (R. 300). Additionally, Dr. Woody found that Plaintiff suffered from only "mild" and "moderate" weakness in her upper and lower extremities. (R. 303). These findings, like the findings from TenderCare, indicate that Plaintiff suffered from some objective impairments, but

7

nothing that could support the drastic work-related limitations proposed by Dr. Southerland in his December 2011 opinion. Because the ALJ adequately articulated "good cause" for discounting Dr. Southerland's opinion, and because substantial evidence supports the ALJ's decision to do so, this Court must defer.

## DR. WOODY'S OPINION

Plaintiff also argues, independently, that the ALJ erred in rejecting Dr. Woody's opinion. (Pl.'s Br., Doc. 13, pp. 11-12; Reply, Doc. 16, pp. 2-3). Specifically, Plaintiff claims that the ALJ committed a legal error by failing to "acknowledg[e] multiple objective findings" in Dr. Woody's opinion. (Pl.'s Br., Doc. 13, p. 12). Plaintiff further claims that Dr. Woody's findings support Plaintiff's own subjective pain testimony, as illustrated by the following portion of Plaintiff's Reply Brief:

> Here, the ALJ rejected [Plaintiff's] allegations of severe back and knee pain and limitations resulting therefrom . . . . In doing so, the ALJ claimed that those complaints were "significantly out of proportion to the other medical evidence . . . ." However in rendering this pronouncement, the ALJ ignored the most significant objective findings in Dr. Woody's report.
>
> [It was] error on its face for the ALJ to conclude that the medical evidence did not support complaints of severe back and knee problems when the ALJ did not acknowledge, assess, and assign weight to objective medical findings that supported those complaints.

(Doc. 16, p. 3)

Contrary to Plaintiff's argument, the ALJ did acknowledge Dr. Woody's objective findings: she noted that, apart from an unsupported finding that Plaintiff was addicted to painkillers, Dr. Woody's "physical examination was within normal limits." (R. 25). As indicated above, substantial evidence supports the ALJ's characterization of Dr. Woody's findings. While

8

it is true, as Plaintiff notes, that Dr. Woody found "moderate weakness in [Plaintiff's] upper extremities, positive straight leg raising bilaterally, reduced range of motion in the back, and reduced range of motion in both knees," (Pl.'s Br., Doc. 13, p. 11) (quotations omitted), these findings do not support the sort of drastic work-related limitations proposed by Dr. Southerland. Additionally, the ALJ expressly discounted some of Dr. Woody's "objective" findings. The ALJ noted that Dr. Woody's "testing and opinions are significantly out of proportion to the other medical evidence and the diagnostic imaging that has shown only 'mild' degenerative spurring at L3-L5." (R. 26, 306). The ALJ also noted that regarding Plaintiff's "back pain and severe arthritis of her knees," Dr. Woody's findings appeared to be based on Plaintiff's own subjective reports. (R. 25-26). In contrast to Dr. Woody's findings, the ALJ assigned "great weight" to a "Case Analysis" completed by Dr. Arthur Schiff, a State agency medical consultant who determined that no objective evidence of COPD or of a medically determinable impairment would be reasonably expected to produce back pain, shortness of breath or any physical restrictions. (R. 308). Dr. Schiff's findings reflect the ALJ's own assessment of the record: the ALJ found that Plaintiff's "alleged severe back pain does not comport with the rest of the evidence of the record," and that Plaintiff's "testimony regarding the severity of her pain [was] out of proportion to the objective evidence." (R. 24).

In summary, and contrary to Plaintiff's arguments, the ALJ did assess Dr. Woody's findings, and properly discounted those findings because they were not supported by the objective evidence of record, and were based, in the ALJ's opinion, on Plaintiff's own subjective testimony, which the ALJ also properly discounted. As such, the ALJ did not commit a legal error by entirely failing to assess Dr. Woody's findings. Furthermore, because substantial

9

evidence supports the ALJ's decision to discount Dr. Woody's findings, there is no basis upon which to disturb the decision below.

## PLAINTIFF'S ALLEGED SIDE EFFECTS

Plaintiff last argues that the ALJ improperly discounted the impact of her medication's side effects. (Pl.'s Br., Doc. 13, p. 15). Plaintiff claimed at her administrative hearing that her pain medication "made her sleepy resulting in her taking naps during the day." (*Id.*; R. 45, 54). The ALJ, though, determined that "the reported side effects [were] not consistent with the medical evidence of record." (R. 26).

Plaintiff now claims that the ALJ erred in failing to state specifically what medical evidence supported her findings regarding Plaintiff's alleged side effects. (Pl.'s Br., Doc. 13, pp. 15-17; Reply, Doc. 16, pp. 4-6). She cites *Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411 F. App'x 236 (11th Cir. 2011), and *Carter v. Comm'r of Soc. Sec.*, 411 Fed App'x 295 (11th Cir. 2011) in support.

In *Carter*, the Eleventh Circuit determined that substantial evidence supported an ALJ's decision to discount complaints of side effects. According to the *Carter* Court, the ALJ properly determined that the claimant's allegations were "not . . . credible based on medical evidence in the record and [the claimant's] daily activities." *Carter*, 411 Fed App'x at 297-99. The *Colon* Court made a similar determination: it noted that "none of [the claimant's] doctors reported any side effects from his medication, and [the claimant] did not complain to them of any side effects." *Colon*, 411 Fed App'x at 238. The *Colon* Court also reiterated what the applicable regulations make clear: that medication side effects are only one factor to be considered in evaluating a claimant's subjective allegations of pain or other symptoms. *See id.* (citing 20 C.F.R. § 404.1529(c)(3)(iv)).

In this case, the ALJ expressly determined that (1) Plaintiff's alleged side effects were not supported by the medical evidence; and that (2) Plaintiff's allegation of disabling pain or other symptoms was not credible. As the Commissioner notes, there were simply "no references to drowsiness in the treatment records." (Resp., Doc. 14, p. 16). Dr. Southerland did note Plaintiff's drowsiness in his December 2011 opinion, but that opinion—a check box questionnaire completed in anticipation of the ALJ's decision—is not a treatment record. In addition, as set out above, the ALJ properly discounted Dr. Southerland's December 2011 opinion as being "grossly inconsistent with his own treating notes and with the evidence as a whole." (R. 26). Accordingly, there is no basis in the record to conclude, as Plaintiff claims, that the ALJ improperly discounted Plaintiff's complaints of side effects.

## CONCLUSION

After careful consideration of the record and in accordance with the analysis above, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 15th day of July, 2014.

s/ Charles H. Weigle\
Charles H. Weigle\
United States Magistrate Judge